IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Civil Action No.

| | |
|---|---|
| **SLLR Enterprises, LLC**<br><br>**Plaintiff,**<br><br>v.<br><br>**3MJ Fitness, Inc., Rock Island Fitness, Inc., Joseph Columbo, Doreen Columbo**<br><br>**Defendants.** | **Complaint** |

## Introduction

1. SLLR Enterprises, LLC ("SLLR") brings this action against 3MJ Fitness, Inc. ("3MJ"), Rock Island Fitness, Inc. ("Rock Island"), Joseph Columbo and Doreen Columbo (3MJ, Rock Island, Joseph and Doreen Columbo are collectively referred to as the "Franchisee Entities" or "Defendants") seeking a declaration that the releases contained in the agreements between SLLR and the Franchisee Entities (the "Releases"): (1) are valid under the New York Franchise Sales Act (the "NYFSA"); and (2) released SLLR from all claims the Franchisee Entities may have had prior to the execution of the agreements.

## Parties

2. SLLR is a North Carolina limited liability company with a principal place of business at 13620 Reese Blvd Suite 300, Huntersville, North Carolina 28078.

3. Roger Martin is the sole member of SLRR and is a citizen of North Carolina.

4. Martin is the Chief Executive Officer of SLLR.

5. SLLR is a franchisor entity offering franchises under the trade name "RockBox Fitness" (the "Franchisor").

6. 3MJ is a New York corporation with a principal place of business at 14 White Pine Lane, Poquott, New York 11733.

7. Rock Island is a New York corporation with a principal place at 14 White Pine Lane, Poquott, New York 11733.

8. 3MJ and Rock Island are each owned and operated by Joseph and Doreen Colombo.

9. Joseph and Doreen Columbo are citizens of New York.

10. All parties with legal interests in the present controversy are joined in this action.

## Jurisdiction and Venue

11. This Court also has jurisdiction over the Parties and subject matter in this civil action pursuant to 28 U.S.C. §1332(a), in that the Parties are citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs because the Defendants have alleged over $4,000,000 in damages related to the claims Plaintiff argues have been released.

12. Venue for this action is predicated upon 28 U.S.C. §1391(b), as this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred. Pursuant to Section 18.4 of the Franchise Agreements between the Parties, the Parties agreed that the agreements were entered into in the state of North Carolina, the services provided to the Defendants emanated from North Carolina, and the Franchisor's principal place of business is in North Carolina. Further, the Releases at issue in this matter were executed by the Franchisor in the state of North Carolina.

13. Jurisdiction and venue are also proper in this judicial district pursuant to the mandatory forum and venue selection clause contained in eleven of the thirteen Franchise Agreements (as defined below).

## Background
### The Franchise Agreements

14. SLLR franchisees are licensed to use SLLR's proprietary marks and to operate under SLLR's business system pursuant to the terms and conditions of the SLLR franchise agreement entered into between each franchisee and SLLR.

15. On April 24, 2021, SLLR and Rock Island entered into a development agreement (the "Development Agreement") under which Rock Island was granted the right and undertook the obligation to develop and operate five (5) franchised businesses.

16. On March 5, 2022, SLLR and Rock Island entered into an addendum (at the request of Rock Island) to the Development Agreement (the "Development Agreement Addendum") under which SLLR agreed to modify the terms of the Development Agreement to lower the number of franchises Rock Island was required to open in exchange for the release of all claims Rock Island may have had against SLLR through the execution date of the Development Agreement Addendum. A true and correct copy of the Development Agreement Addendum is attached as Exhibit "A".

17. The release agreed to in the Development Agreement Addendum reads as follows:

> Release. As consideration for Franchisor entering into this Agreement, Developer, for itself and all persons and entities claiming by, through, or under it, hereby release, acquit and discharge Franchisor and its present and former officers, employees, shareholders, directors, agents, servants, representatives, members, affiliates, successors, and assign (the "Franchisor Releasees") from all claims, debts, demands, liabilities, costs, attorneys' fees, actions or causes of action, whether known or unknown, which Developer, by itself, on behalf of, or in conjunction with any person, persons, partnership or corporation, have, had or claims to have against the Franchisor Releasees

arising out of or related to: **(i) the offer and sale of the rights under the Developer Agreement, or any other franchise rights granted by Franchisor as part of any other agreement entered into between Franchisor and Developer or affiliate of the same; (ii) the parties' respective rights and obligations under the Development Agreement; and any other franchise agreement or other contract that Developer has entered into with any Franchisor Releasee that have accrued as of the date of this Agreement; or (iii) any other franchise-related statute, law or regulation that is applicable to the parties' relationship**. Developer represents and warrants that it (a) has not assigned any of the claims released in this Section, and (b) will not initiate, or assist or cooperate with any third party in connection with, an action or other proceeding against any Franchisor Releasees in connection with the claims released in this Section.

Ex. A (emphasis added).

18. On June 6, 2022, SLLR and Rock Island entered into a franchise agreement under the Development Agreement for Centereach, NY (the "Centereach Franchise Agreement").

19. On August 30, 2022, SLLR and Rock Island entered into a franchise agreement under the Development Agreement for Hauppauge, NY (the "Hauppauge Franchise Agreement").

20. On August 31, 2022, SLLR and Rock Island entered into a franchise agreement under the Development Agreement for Levittown, NY (the "Levittown Franchise Agreement"). (Collectively, the Centereach Franchise Agreement; Hauppauge Franchise Agreement; and Levittown Franchise Agreement are hereafter referred to as the "Franchise Agreements").

21. On December 27, 2022, SLLR and Rock Island entered into an addendum to the Hauppauge Franchise Agreement (the "Franchise Agreement Addendum") (at the request of Rock Island) under which SLLR agreed to suspending required services provided by the Managed Member Acquisition Center in exchange for Rock Island's release of all claims Rock Island may

have had against SLLR through the execution date of the Franchise Agreement Addendum. A true and correct copy of the Franchise Agreement Addendum is attached as Exhibit "B".

22. The release agreed to in the Franchise Agreement Addendum reads as follows:

> Release. As consideration for Franchisor entering into this Agreement, Franchisee, for itself and all persons and entities claiming by, through, or under it, hereby release, acquit and forever discharge Franchisor and its present and former officers, employees, members, managers, shareholders, directors, agents, servants, representatives, affiliates, successors, and assign (the "Franchisor Releasees") from all claims, debts, demands, liabilities, costs, attorneys' fees, actions or causes of action, whether known or unknown, which Franchisee, by itself, on behalf of, or in conjunction with any person, persons, partnership or corporation, have, had or claims to have against the Franchisor Releasees arising out of or related to**: (i) the offer and sale of the rights under the Franchise Agreement, or any other franchise rights granted by Franchisor as part of any other agreement entered into between Franchisor and Franchisee or affiliate of the same; (ii) the parties' respective rights and obligations under the Franchise Agreement; and any other franchise agreement or other contract that Franchisee has entered into with any Franchisor Releasee that have accrued as of the date of this Agreement; or (iii) any other franchise-related statute, law or regulation that is applicable to the parties' relationship**. Franchisee represents and warrants that it (a) has not assigned any of the claims released in this Section, and (b) will not initiate, or assist or cooperate with any third party in connection with, an action or other proceeding against any Franchisor Releasee in connection with the claims released in this Section.

Ex. B (emphasis added).

23. On February 10, 2023, SLLR and Rock Island entered into an assignment and consent to transfer agreement (the "Assignment Agreement") (at the request of Rock Island and 3MJ), permitting the transfer of the Centereach Franchise Agreement for the Centereach, NY franchised business from Rock Island to 3MJ in exchange for Rock Island's release of all claims

Rock Island may have had against SLLR through the execution date of the Assignment Agreement. A true and correct copy of the Assignment Agreement is attached as Exhibit "C."

24. The release agreed to in the Assignment Agreement reads as follows:

> <u>Release</u>. Upon execution of this Agreement, Assignor, for themselves and all persons and entities claiming by, through or under any of them, hereby release, acquit, and forever discharge Franchisor and its present and former officers, employees, shareholders, directors, agents, servants, representatives, affiliates, franchisees, licensees, successors and assigns (the "Franchisor Releasees") from all obligations, claims, debts, demands, covenants, contracts, promises, agreements, liabilities, costs, attorneys' fees, actions or causes of action whatsoever, whether known or unknown, which Assignor by themselves or on behalf of, or in conjunction with any other person, persons, partnership or corporation, have, had, or might claim to have against the Franchisor Releasees through the date of this Agreement, including those **arising out of or related to: (i) the offer, sale, and transfer of the rights granted under the Franchise Agreement; (ii) the parties' respective rights or obligations under the Franchise Agreement; and (iii) any and all rights, obligations or claims under any state franchise regulations or franchise relationship laws**. Assignor warrants and represents that he has not assigned or otherwise transferred any claim or cause of action released by this Agreement.

Ex. C (emphasis added).

25. On March 21, 2025, SLLR and Rock Island entered into a mutual termination and release agreement (the "MUDA Mutual Termination") (at the request of Rock Island), under which SLLR agreed to terminate the Development Agreement and the Hauppauge Franchise Agreement prior to their expiration in exchange for Rock Island's release of all claims Rock Island may have had against SLLR through execution date of the MUDA Mutual Termination. A true and correct copy of the MUDA Termination Agreement is attached as Exhibit "D."

26. The release agreed to in the MUDA Mutual Termination reads as follows:

> <u>Release by Franchisee</u>. Franchisee, for itself and all persons and entities claiming by, through, or under it, releases, acquits and forever discharges Franchisor and its present and former officers, employees, members, managers, directors, agents, servants, representatives (including, without limitation, sales brokers), parents, affiliates, subsidiaries, franchisees

successors, and assigns (the "Franchisor Releasees") from all obligations, claims, debts, demands, covenants, contracts, promises, agreements, liabilities, costs, attorneys' fees, actions or causes of action whatsoever, whether known or unknown, which Franchisee, by itself, on behalf of, or in conjunction with any other person, persons, partnership or corporation, has, had or claims to have against the Franchisor Releasees that accrued prior to the Effective Date of this Agreement, including without limitation, those **arising out of or related to: (i) the parties' rights or obligations under the Franchise Agreement, as well as any other agreement between Franchisee, and any Franchisor Releasee; or (ii) any other franchise-related statute, law or regulation that is applicable to the parties' relationship. Franchisee represents and warrants that it has not assigned any of the claims released by this Agreement.** Franchisee further represents and warrants that it will not initiate, or assist or cooperate with any third party in connection with, an action or other proceeding against any Franchisor Releasee in connection with the claims released in this Section.

Ex. D (emphasis added).

27. On April 25, 2025, SLLR and Rock Island entered into a mutual termination and release agreement (the "Levittown Mutual Termination") (at the request of Rock Island) under which SLLR agreed to the early termination of the Levittown Franchise Agreement for the franchised business in Levittown, NY in exchange Rock Island's release of all claims Rock Island may have had against SLLR through the execution of the FA Mutual Termination. A true and correct copy of the Levittown Mutual Termination is attached as Exhibit "E".

28. The release agreed to in the Levittown Mutual Termination reads as follows:

> <u>Release by Franchisee</u>. Franchisee, for itself and all persons and entities claiming by, through, or under it, releases, acquits and forever discharges Franchisor and its present and former officers, employees, members, managers, directors, agents, servants, representatives (including, without limitation, sales brokers), parents, affiliates, subsidiaries, franchisees successors, and assigns (the "Franchisor Releasees") from all obligations, claims, debts, demands, covenants, contracts, promises, agreements, liabilities, costs, attorneys' fees, actions or causes of action whatsoever, whether known or unknown, which Franchisee, by itself, on behalf of, or in conjunction with any other person, persons, partnership or corporation, has, had or claims to have against the Franchisor Releasees that accrued prior to the Effective Date of this Agreement, including without limitation, those **arising out of or related to: (i) the parties' rights or obligations under the**

**Franchise Agreement, as well as any other agreement between Franchisee, and any Franchisor Releasee; or (ii) any other franchise-related statute, law or regulation that is applicable to the parties' relationship**. Franchisee represents and warrants that it has not assigned any of the claims released by this Agreement. Franchisee further represents and warrants that it will not initiate, or assist or cooperate with any third party in connection with, an action or other proceeding against any Franchisor Releasee in connection with the claims released in this Section.

Ex. E (emphasis added).

29. Defendants signed each of the above-referenced Releases on their own volition and in exchange for a specific request of SLLR.

<u>Defendants' Unfounded Claims Against Plaintiff</u>

30. Defendants now have embroiled Plaintiff into a dispute based on unfounded claims that Defendants expressly released multiple times.

31. Defendants allege Plaintiff violated the NYFSA, committed fraud and made misrepresentations during the franchise sales process, and further allege Plaintiff breached the Franchise Agreements.

32. These claims are not based on fact but instead seek to lay the blame at Plaintiff's feet for Defendants' business failings.

33. The Defendants have alleged the Releases are illegal and invalid under the law.

34. Defendants are not permitted to make such claims, however, because they released their ability to do so in five separate instances.

## **COUNT I**

**<u>Declaratory Judgment that the Releases are Valid under the New York Franchise Sales Act</u>**

35. SLLR incorporates by reference the averments set forth in the above paragraphs as though the same were set forth at length herein.

Page **8** of **12**

Case 3:25-cv-00648    Document 1    Filed 08/27/25    Page 8 of 12

36. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, this Court has authority to declare the rights and other legal relations of any interested party seeking a declaration against a party with whom it has an actual controversy.

37. An actual and immediate controversy exists between Plaintiff and Defendants because Defendants have asserted claims against Plaintiff that Plaintiff contends are barred by the executed Releases. The Parties' adverse legal positions create a live dispute appropriate for declaratory relief under 28 U.S.C. §§ 2201–2202.

38. At all times herein, SLLR has been in compliance with the terms of each of the above-referenced agreements and fulfilled all obligations agreed to in each of the agreements in exchange for the releases.

39. Pursuant to § 687(5) of the New York Franchise Sales Act, it is unlawful to **require** a franchisee to assent to a release which would relieve a person from any duty or liability imposed by the NYFSA.

40. The Eastern District of New York, along with other similar courts across the country, have found that a release executed in connection with a transaction in which sufficient consideration was exchanged was not deemed to be "required" and, therefore, were permitted under the NYFSA. See Sportique Motors, Ltd. v. Jaguar Cars, Inc., 195 F. Supp. 2d 390, 396 (E.D.N.Y. 2002), aff'd, 55 F. App'x 580 (2d Cir. 2003). See also Edwards v. Kia Motors of Am., Inc., 486 F.3d 1229, 1235 (11th Cir. 2007); Gen. Motors LLC v. Canton Motor Sales, Inc., No. 1:12-CV-01994-JEC, 2014 WL 901430, at *10 (N.D. Ga. Mar. 7, 2014).

41. Each release described above was negotiated and exchanged for a specific alteration to the franchise relationship requested by the Defendants.

42. Defendants had the opportunity to further negotiate each agreement that contained a release to alter each release's language or except claims from each release that Defendants may have wanted to bring in the future.

43. Defendants negotiated no such terms.

44. Defendants instead agreed to each release individually and voluntarily in exchange for their own negotiated demands, which SLLR obliged.

45. Defendants were at no point "required" to consent to the release of the claims they chose to release, and, instead, exchanged their right to bring such claims in exchange for mutually negotiated consideration.

46. Therefore, the releases are valid, and any claims Defendants may have had against Plaintiff are void and may not be brought in this or any other court.

47. A declaration from this Court is necessary to resolve the dispute over whether the negotiated releases Defendants agreed to as a part of the Development Agreement Addendum, Franchise Agreement Addendum, Assignment Agreement, MUDA Mutual Termination, and FA Mutual Termination, respectively, are valid.

## Count II

### Declaratory Judgment that the Releases Released Plaintiff of all Claims Defendants may have had Prior to the Releases' Execution

48. SLLR incorporates by reference the averments set forth in the above paragraphs as though the same were set forth at length herein.

49. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, this Court has authority to declare the rights and other legal relations of any interested party seeking a declaration against a party with whom it has an actual controversy.

50. An actual and immediate controversy exists between Plaintiff and Defendants because Defendants have asserted claims against Plaintiff that Plaintiff contends are barred by the executed releases. The Parties' adverse legal positions create a live dispute appropriate for declaratory relief under 28 U.S.C. §§ 2201–2202.

51. At all times herein, SLLR has complied with the terms of each of the above-referenced agreements and fulfilled all obligations agreed to in each of the agreements in exchange for the releases.

52. As discussed above, Defendants agreed to each release, releasing Plaintiff from any potential claims against it from March 5, 2022 through April 25, 2025.

53. At minimum, this released Plaintiff from any of Defendants' would-be claims regarding the sales process for each Franchise Agreement and the Development Agreement.

54. Despite this, Defendants allege to have numerous claims regarding the sales process they seek to bring against Plaintiff.

55. A declaration from this Court is necessary to resolve the dispute over whether the negotiated release Defendants agreed to as a part of the Development Agreement Addendum, Franchise Agreement Addendum, Assignment Agreement, MUDA Mutual Termination, and FA Mutual Termination, respectively, jointly and severally release Plaintiff from any claims Defendants allege to have against Plaintiff from the franchise sales process.

**WHEREFORE**, SLLR Enterprises, LLC respectfully requests the Court:

1. Issue a declaration that each respective Release agreed to as a part of the Development Agreement Addendum, Franchise Agreement Addendum, Assignment Agreement, MUDA Mutual Termination, and FA Mutual Termination, is valid;

2. Issue a declaration that each respective Release agreed to as a part of the

Development Agreement Addendum, Franchise Agreement Addendum, Assignment Agreement, MUDA Mutual Termination, and FA Mutual Termination, prevents Defendants from bringing any potential claims against the Plaintiff, whether known or unknown, related to the offer and sale of the Development Agreement and the Franchise Agreements, related to any franchise-related statute, law, or regulation that is applicable to the Parties' relationship, and related to breach of contract by Plaintiff where such potential claim arose prior to the Release date;

3. Award Plaintiff the reasonable attorneys' fees and costs incurred in bringing this action pursuant to Section 22.8 of the Franchise Agreements; and

4. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

This the 27th day of August, 2025

**HULL & CHANDLER**

By: /s/ Elizabeth Vennum
Elizabeth Vennum
NC State Bar No. 49747
Counsel for Defendant
Hull & Chandler
1009 East Boulevard
Charlotte, North Carolina 28203
Telephone: (704) 375-8488
Fax: (704) 375-8487
E-mail: lvennum@lawyercarolina.com