## ASSIGNMENT AND CONSENT TO TRANSFER

**THIS ASSIGNMENT AND CONSENT TO TRANSFER AGREEMENT** (the "Agreement") is made and entered into this _____2/10/2023_____, by and between: (i) SLLR Enterprises, LLC, a North Carolina limited liability company with a business address at 13620 Reese Blvd Suite 300, Huntersville, North Carolina 28078 (the "Franchisor"); (ii) **Rock Island Fitness, Inc.,** an individual with an address at **14 White Pine Lane, Poquott, New York 11733** (the "Assignor"); and (iii) **3MJ Fitness, Inc.,** a *New York State* **Limited Liability Company** with an address at **14 White Pine Lane, Poquott, New York 11733** (the "Assignee").

## BACKGROUND

A.  Franchisor is engaged in the business of granting qualified persons the right to operate a RockBox Fitness studio operated in conformity with the RockBox Fitness business system (each, a "Studio").

B.  On or around **June 6, 2022**, Assignor entered into a form of franchise agreement (the "Franchise Agreement") pursuant to which Assignor obtained the right and undertook the obligation to open and operate a studio within **Centerreach, NY** (the "Franchised Business").

C.  Assignor subsequently created a wholly owned entity, namely Assignee, and has requested that it be able to assign its rights, title and interest under the Franchise Agreement to Assignee.

D.  Franchisor is willing to consent to the assignment of the Franchise Agreement as described above, subject to the terms and conditions of this Agreement, including without limitation, Assignor executing the personal guaranty attached to the Franchise Agreement.

## AGREEMENT

In consideration of the mutual covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, and intending to be legally bound, the parties agree as follows:

1.  **Assignment and Consent**.  Assignor hereby assigns and transfers over to Assignee all of Assignor's rights, title and interest in and to the Franchise Agreement. The foregoing assignment will not be effective until this Agreement is signed and all other conditions to the assignment described in Section 3 of this Agreement are met. Franchisor hereby: (i) waives its right to collect any transfer fee or right of first refusal in connection with the foregoing assignment; and (ii) otherwise consents to this assignment, subject to the terms and conditions set forth herein.

2.  **Assumption**. Subject to the terms and conditions of this Agreement, Assignee hereby assumes all of Assignor's obligations, assignments, commitments, duties and liabilities under the Franchise Agreement, and agrees to be bound by, observe and faithfully perform all of the obligations, assignments, commitments, and duties of Assignor under the Franchise Agreement with the same force and effect as if the Franchise Agreement were originally written with Assignee as the "Franchisee" thereunder, as applicable.

3.  **Additional Conditions for Franchisor's Consent**. The parties agree and acknowledge that Franchisor's consent to this assignment is further conditioned on the following:

3.1     Contemporaneous with the execution of this Agreement, the parties agree and acknowledge that Assignor will execute the form of personal guaranty attached to this Agreement as Exhibit A (the "Guaranty"), pursuant to which Assignor will agree to: (i) personally guarantee Assignee's obligations under the Franchise Agreement; and (ii) be personally bound by the obligations set forth in the Franchise Agreement.

3.2     Except as otherwise provided in this Agreement, Assignor and Assignee must take all actions necessary to meet any other conditions, as well as comply with any of their respective obligations, related to the transfer of the Franchise Agreement and Franchised Business as set forth in the Franchise Agreement.

4.     **Representation and Warranty**. Assignor hereby represents and warrants that: (i) Assignee is wholly owned by Assignor; (ii) Assignor and Assignee must obtain Franchisor's approval to transfer any interest in Assignee to any third parties; and (iii) each new owner of Assignee, if approved, will be required to sign the form of personal guaranty attached to the Franchise Agreement.

5.     **Release**. Upon execution of this Agreement, Assignor, for themselves and all persons and entities claiming by, through or under any of them, hereby release, acquit, and forever discharge Franchisor and its present and former officers, employees, shareholders, directors, agents, servants, representatives, affiliates, franchisees, licensees, successors and assigns (the "Franchisor Releasees") from all obligations, claims, debts, demands, covenants, contracts, promises, agreements, liabilities, costs, attorneys' fees, actions or causes of action whatsoever, whether known or unknown, which Assignor by themselves or on behalf of, or in conjunction with any other person, persons, partnership or corporation, have, had, or might claim to have against the Franchisor Releasees through the date of this Agreement, including those arising out of or related to: (i) the offer, sale, and transfer of the rights granted under the Franchise Agreement; (ii) the parties' respective rights or obligations under the Franchise Agreement; and (iii) any and all rights, obligations or claims under any state franchise regulations or franchise relationship laws. Assignor warrants and represents that he has not assigned or otherwise transferred any claim or cause of action released by this Agreement.

6.     **Binding Effect**.  This Agreement, along with the Franchise Agreement, shall be binding and inure to the benefit of the parties and their respective heirs, successors and assigns.

7.     **Entire Agreement**. This Agreement shall constitute the entire integrated agreement between the parties with respect to the subject matter contained herein and shall not be subject to change, modification, amendment or addition without the express written consent of all the parties.

8.     **Attorneys' Fees and Costs**.  In the event that it becomes necessary for Franchisor to retain the services of legal counsel to enforce the terms of this Agreement against any other party hereto and Franchisor prevails, then Franchisor shall be entitled to recover all costs and expenses, including reasonable attorneys' fees and expert/investigative fees, incurred in enforcing the terms of this Agreement from the breaching party(ies) hereunder.

9.     **Governing Law and Venue**. This Agreement shall be governed by the laws of the State of North Carolina, which laws shall prevail in the event of any conflict of law. Except for Franchisor's right to seek injunctive relief in any appropriate jurisdiction to enjoin any other party's breach or threatened breach of this Agreement, in the event of a dispute, any action to enforce the terms of this Agreement must be brought and litigated to conclusion in any federal or state court of competent jurisdiction located in or closest to Huntersville, North Carolina or, if appropriate, the United States District Court presiding over Huntersville, North Carolina.

10.   **Review**.  Each party declares that the terms of this Agreement have been completely read and are fully understood and voluntarily accepted by each party, after having a reasonable opportunity to retain, and confer with counsel. This Agreement is entered into after a full investigation by the parties, and the parties are not relying upon any statements or representations not contained in this Agreement.

11.   **Authority.**   The persons executing this Agreement on behalf of Assignor and Assignee acknowledge their authority to do so.

12.   **Counterparts**.  This Agreement may be signed in any number of counterparts, each of which shall be an original with the same effect as if the signatures thereto were upon the same instrument. This Agreement shall become effective when each party hereto shall have received a counterpart hereof signed by the other parties hereto.

**I HAVE READ THE ABOVE AGREEMENT AND UNDERSTAND ITS TERMS.  I WOULD NOT SIGN THIS AGREEMENT IF I DID NOT UNDERSTAND AND AGREE TO BE BOUND BY ITS TERMS.**

**IN WITNESS WHEREOF,** the undersigned have affixed their signatures hereto as of the day and date first above written.

**FRANCHISOR**

**SLLR ENTERPRISES, LLC**

By: _____
   Roger Martin

Name:_____
   Roger Martin

Title:_____
   CEO

Date:_____
   2/10/2023

**ASSIGNOR**

**Rock Island Fitness, Inc,**

_____
*Joseph Colombo*, Individually

_____
*Doreen Colombo*, Individually

Date: _____
   2/10/2023

**ASSIGNEE**

**3MJ FITNESS, Inc.,**

By: _____
   Joe Colombo

Name:_____
   Joe Colombo

Title:_____
   VP

Date: _____
   2/10/2023

DocuSign Envelope ID: 10EB4C12-16B6-43B3-A260-D62BB4F9B45C

By: _____

Name: _____
Doreen Colombo

Title: _____
President

Date: _____
2/10/2023

DocuSign Envelope ID: 10EB4C12-16B6-43B3-A260-D62BB4F9B45C

# EXHIBIT A
## PERSONAL GUARANTY

## PERSONAL GUARANTY

NOTE: IF FRANCHISEE IS A CORPORATION, EACH OF FRANCHISEE'S SHAREHOLDERS AND THEIR SPOUSES MUST EXECUTE THE FOLLOWING UNDERTAKING. IF FRANCHISEE IS A PARTNERSHIP, EACH OF FRANCHISEE'S PARTNERS AND THEIR SPOUSES MUST EXECUTE THE FOLLOWING UNDERTAKING. IF FRANCHISEE IS A LIMITED LIABILITY COMPANY, EACH OF FRANCHISEE'S MEMBERS AND MANAGERS AND THEIR SPOUSES MUST EXECUTE THE FOLLOWING UNDERTAKING. IF THE FRANCHISEE IS AN INDIVIDUAL, FRANCHISEE'S SPOUSE MUST EXECUTE THE FOLLOWING UNDERTAKING.

### ARTICLE I PERSONAL GUARANTY

The undersigned persons (individually and collectively "you") hereby represent to SLLR ENTERPRISES, LLC ("Franchisor") that you are all of the shareholders of **3MJ Fitness, Inc.** ("Franchisee"), or all of the partners of Franchisee, or all of the members and managers, or the spouse of any individual Franchisee, or the spouse of any such shareholder, general partner, or member or manager of Franchisee, as the case may be. In consideration of the grant by Franchisor to the Franchisee as herein provided, each you hereby agree, in consideration of benefits received and to be received by each of you, jointly and severally, and for yourselves, your heirs, legal representatives and assigns, to be firmly bound by all of the terms, provisions and conditions of the foregoing SLLR Enterprises, LLC franchise agreement (the "Franchise Agreement"), and any other agreement between Franchisee and Franchisor and/or its affiliates, and do hereby unconditionally guarantee the full and timely performance by Franchisee of each and every obligation of Franchisee under the aforesaid Franchise Agreement or other agreement between Franchisor and Franchisee, including, without limitation, any indebtedness of Franchisee arising under or by virtue of the aforesaid Franchise Agreement and that you (jointly and severally) will not permit or cause any change in the percentage of Franchisee owned, directly or indirectly, by any person, without first obtaining the written consent of Franchisor prior to said proposed transfer, which consent must not be unreasonably withheld, and without first paying or causing to be paid to Franchisor the transfer fee provided for in said Franchise Agreement, if applicable, and without otherwise complying with the transfer provisions of the foregoing Franchise Agreement. You agree to be bound by the dispute resolution procedures set forth in the Franchise Agreement. You further agree to be bound by the in-term and post-term covenants against competition of the aforesaid Franchise Agreement.

### ARTICLE II CONFIDENTIALITY

During the initial and any renewal terms of the Franchise Agreement and this personal guaranty (the "Guaranty"), you will receive information, which Franchisor considers its trade secrets and confidential information. You shall not, during the term of this Agreement or thereafter, communicate, divulge, or use for the benefit of any other person, partnership, association, corporation, or limited liability company any "Confidential Information", as such term is defined in the Franchise Agreement. Any and all information, knowledge, know-how,

techniques, and other data, which Franchisor designates as confidential, will be deemed Confidential Information for purposes of this Guaranty.

## ARTICLE III NON-COMPETITION

You acknowledge that as a participant in the Franchisor's franchise System, you will receive proprietary and confidential information and materials, trade secrets, and the unique methods, procedures and techniques which Franchisor has developed. Therefore to protect Franchisor and all Franchisor's franchisees, you agree as follows:

1) **During the Term of the Franchise Agreement and this Guaranty.** During the term of the Franchise Agreement and this Guaranty, neither your, nor your principals, officers, or directors, nor any members of your immediate family or the immediate family of your principals, officers, or directors may, directly or indirectly, for themselves or through, on behalf of, or in conjunction with any other person, partnership or corporation:

a) Own, maintain, engage in, be employed by, lend money to, extend credit to or have
any interest in any gym, fitness center, health club, personal training center, weight loss center, martial arts studio, corporate wellness or corporate fitness program, or any other business involved in group fitness or any other business offering products and services offered or authorized for sale by System franchisees (a "Competing Business"); provided, however, that this Section does not apply to your operation of any other RockBox Business under the RockBox Fitness Proprietary Marks and System;

b) Employ or seek to employ any person who is at that time employed by Franchisor, Franchisor's affiliates or any other System franchisee, or otherwise directly or indirectly induce or seek to induce such person to leave his or her employment thereat; or

c) Divert or attempt to divert any business or customer of the RockBox Business to any
competitor, by direct or indirect inducement or otherwise, or do or perform, directly or indirectly, any other act injurious or prejudicial to the goodwill associated with the Proprietary Marks or the System.

2) **After the Term of This Agreement.**

a) For a period of 2 years after the expiration and nonrenewal, transfer or termination of
the Franchise Agreement, regardless of the cause, neither you, your officers, directors, or principals, nor any member of your immediate family or the immediate family of your officers, directors, or principals may, directly or indirectly, for themselves or through, on behalf of, or in conjunction with any other person, partnership or corporation enter into any business competing in whole or in part with Franchisor in granting franchises or licenses to

operate a Competing Business at the time the Franchise Agreement is terminated or otherwise expires and is not renewed.

      b)   For a period of 2 years after the expiration, transfer or termination of the Franchise Agreement, regardless of the cause, neither you, your officers, directors, or principals, nor any member of your immediate family or the immediate family of your officers, directors, or principals may, directly or indirectly, for themselves or through, on behalf of, or in conjunction with any other person, partnership or corporation:

      (i)   Own, maintain, engage in, be employed by, or have any interest in any Competing Business at the time of termination or expiration and nonrenewal (i) at the RockBox Business; (ii) within the territory (the "Territory"); or (iii) within a radius of 15 miles of the perimeter of (a) the Territory being granted hereunder or (b) any other territory licensed by Franchisor as of the date of expiration or termination of this Agreement;

      (ii)  Solicit business from customers of Franchisee's former RockBox Business;

      (iii) Contact any of Franchisor's suppliers or vendors for any competitive business purpose; or

      (iv) Interfere with our business relationships or with anyone or any entity with which we have a business relationship.

    3)   **Intent and Enforcement**.  It is the parties' intent that the provisions of this Article III be judicially enforced to the fullest extent permissible under applicable law.  Accordingly, the parties agree that any reduction in scope or modification of any part of the noncompetition provisions contained herein shall not render any other part unenforceable.  In the event of the actual or threatened breach of this Article III by you, any of your principals, or any members of their immediate family, Franchisor shall be entitled to an injunction restraining such person from any such actual or threatened breach.  You agree that in the event of the actual or threatened breach of this Article III, Franchisor's harm will be irreparable and that Franchisor has no adequate remedy at law to prevent such harm.  You acknowledge and agree that you have previously worked or been gainfully employed in other careers and that the provisions of this Article III in no way prevents you from earning a living.  You further acknowledge and agree that the time limitation of this Article III shall be tolled during any default under the Franchise Agreement and this Guaranty.

**ARTICLE IV MISCELLANEOUS**

1)    **Acknowledgment**.    You acknowledge that this Guaranty is not a franchise agreement and does not confer upon you any rights to use the Franchisor's Proprietary Marks or its System.

2)    **Governing Law.**    This Guaranty shall be deemed to have been made in and governed by the laws of the State of North Carolina.

3)    **Internal Dispute Resolution.**    You must first bring any claim or dispute arising out of or relating to the Franchise Agreement or this Guaranty to Franchisor's Managing Member and/or President.    You agree to exhaust this internal dispute resolution procedure before bringing any dispute before a third party. This agreement to engage in internal dispute resolution first shall survive the termination or expiration of this Guaranty.

4)    **Mediation.**    At Franchisor's option, all claims or disputes between you and Franchisor arising out of, or in any way relating to, this Guaranty or the Franchise Agreement or any other agreement by and between you and the Franchisor, or any of the parties' respective rights and obligations arising from such agreements, must be submitted first to non-binding mediation, in Huntersville, North Carolina, under the auspices of the American Arbitration Association ("AAA"), in accordance with the
AAA's Commercial Mediation Rules then in effect.  Before commencing any legal action against Franchisor or its affiliates with respect to any such claim or dispute, you must submit a notice to Franchisor, which specifies, in detail, the precise nature and grounds of such claim or dispute.
Franchisor will have a period of 30 days following receipt of such notice within which to notify you as to whether Franchisor or its affiliates elects to exercise its option to submit such claim or dispute to mediation.  You may not commence any action against Franchisor or its affiliates with respect to any such claim or dispute in any court unless Franchisor fails to exercise its option to submit such claim or dispute to mediation, or such mediation proceedings have been terminated either: (i) as the result of a written declaration of the mediator(s) that further mediation efforts are not worthwhile; or (ii) as a result of a written declaration by Franchisor.  Franchisor's rights to mediation, as set forth herein, may be specifically enforced by Franchisor.  Each party shall bear its own cost of mediation and the parties shall share the cost of mediator.  This agreement to mediate at our option shall survive the termination or expiration of the Franchise Agreement.

a) The parties shall not be required to first attempt to mediate a controversy, dispute, or claim through mediation as set forth in this Section 4 if such controversy, dispute, or claim concerns an allegation that a party has violated (or threatens to violate, or poses an imminent risk of violating):

(i)    Any federally protected intellectual property rights in the Proprietary Marks, the System, or in any Confidential Information;

(ii)    Any claims arising out of or pertaining to any warranty issued; or

DocuSign Envelope ID: 10EB4C12-16B6-43B3-A260-D62BB4F9B45C

      (iii)    Any of the restrictive covenants contained in this agreement.

5)    **Third Party Beneficiaries.**  Franchisor's officers, directors, shareholders, agents and/or employees are express third party beneficiaries of the Franchise Agreement and this Guaranty, and the mediation provisions contained herein, each having authority to specifically enforce the right to mediate and arbitrate claims asserted against such person(s) by you.

6)    **Injunctive Relief.**  Nothing contained in this Guaranty shall prevent Franchisor from applying to or obtaining from any court having jurisdiction, without bond, a writ of attachment, temporary injunction, preliminary injunction and/or other emergency relief available to safeguard and protect Franchisor's interests prior to the filing of any mediation proceeding or pending the trial or handing down of a decision or award pursuant to any mediation or judicial proceeding conducted hereunder.

7)    **Jurisdiction and Venue.**  With respect to any proceeding not subject to mediation, the parties expressly agree submit to the jurisdiction and venue of any court of general jurisdiction in Huntersville, North Carolina, and the jurisdiction and venue of the United States District Court for the Western District of North Carolina.

8)    **Jury Trial Waiver.**  THE PARTIES HEREBY AGREE TO WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER AT LAW OR EQUITY, REGARDLESS OF WHICH PARTY BRINGS SUIT. THIS WAIVER SHALL APPLY TO ANY MATTER WHATSOEVER BETWEEN THE PARTIES HERETO WHICH ARISES OUT OF OR IS RELATED IN ANY WAY TO THIS PERSONAL GUARANTY OR THE FRANCHISE AGREEMENT, THE PERFORMANCE OF EITHER PARTY, AND/OR YOUR PURCHASE FROM FRANCHISOR OF THE FRANCHISE AND/OR ANY GOODS OR SERVICES.

9)    **Waiver of Punitive Damages.**  You waive, to the fullest extent permitted by law, any right to or claim for any punitive, exemplary, incidental, indirect, special or consequential damages (including, without limitation, lost profits) which you may have against us arising out of any cause whatsoever (whether such cause be based in contract, negligence, strict liability, other tort or otherwise) and agree that in the event of a dispute, your recovery shall be limited to actual damages.  If any other term of this Personal Guaranty is found or determined to be unconscionable or unenforceable for any reason, the foregoing provisions shall continue in full force and effect, including, without limitation, the waiver of any right to claim any consequential damages.

10)    **Limitation on Action.**  You agree that no cause of action arising out of or under this Guaranty or the Franchise Agreement may be maintained by you unless brought before the expiration of one (1) year after the act, transaction or occurrence upon which such action is based or the expiration of one (1) year after you become aware of facts or circumstances reasonably indicating that you may have a claim against the Franchisor, whichever occurs sooner, and that any action not brought within this period shall be barred as a claim, counterclaim, defense or set-off.

DocuSign Envelope ID: 10EB4C12-16B6-43B3-A260-D62BB4F9B45C

11)     **Attorneys' Fees**.   If either party institutes any mediation action or judicial proceeding to enforce any monetary or nonmonetary obligation or interpret the terms of this Guaranty and the Franchise Agreement, and Franchisor prevails in such action, you shall be liable to Franchisor for all costs, including reasonable attorneys' fees, incurred in connection with such proceeding.

12)     **Nonwaiver.**   Franchisor's failure to insist upon strict compliance with any provision of this Guaranty and the Franchise Agreement shall not be a waiver of Franchisor's right to do so, any law, custom, usage or rule to the contrary notwithstanding.  Delay or omission by Franchisor respecting any breach or default shall not affect Franchisor's rights respecting any subsequent breaches or defaults.  All rights and remedies granted in this Guaranty shall be cumulative.  Franchisor's election to exercise any remedy available by law or contract shall not be deemed a waiver or preclude exercise of any other remedy.

13)     **Severability.**   The parties agree that if any provisions of this Guaranty may be construed in two ways, one of which would render the provision illegal or otherwise voidable or unenforceable and the other which would render it valid and enforceable, such provision shall have the meaning which renders it valid and enforceable.   The provisions of this Guaranty are severable, and this Guaranty shall be interpreted and enforced as if all completely invalid or unenforceable provisions were not contained herein, and partially valid and enforceable provisions shall be enforced to the extent that they are valid and enforceable. If any material provision of this Guaranty shall be stricken or declared invalid, the parties agree to negotiate mutually acceptable substitute provisions.  In the event that the parties are unable to agree upon such provisions, Franchisor reserves the right to terminate this Guaranty.

14)     **Construction of Language.**   Any term defined in the Franchise Agreement which is not defined in this Guaranty  will be ascribed the meaning given to it in the Franchise Agreement.  The language of this Guaranty will be construed according to its fair meaning, and not strictly for or against either party.   All words in this Guaranty refer to whatever number or gender the context requires.  If more than one party or person is referred to as you, their obligations and liabilities must be joint and several. Headings are for reference purposes and do not control interpretation.

15)     **Successors**.  References to "Franchisor", "the undersigned," or "you" include the respective parties' successors, assigns or transferees.

16)     **No Personal Liability**.  You agree that fulfillment of any and all of Franchisor's obligations written in this Guaranty or in the Franchise Agreement or based on any oral communications which may be ruled to be binding in a Court of Law shall be Franchisor's sole responsibility and none of Franchisor's agents, representatives, nor any individuals associated with Franchisor's franchise company shall be personally liable to Franchisee or you for any reason.

DocuSign Envelope ID: 10EB4C12-16B6-43B3-A260-D62BB4F9B45C

**PERSONAL GUARANTORS**                    **SPOUSES**

Joe Colombo

_____  _____    _____

Doreen Colombo

_____  _____    _____

_____                              _____