# **MUTUAL TERMINATION AGREEMENT**

This Mutual Termination Agreement (the "Agreement") is hereby made and entered into on 3/21/2025 (the "Effective Date"), by and between: (i) SLLR Enterprises, LLC, a North Carolina limited liability company with a business address at 13620 Reese Blvd Suite 300, Huntersville, NC 28078 ("Franchisor"); and (ii) Rock Island Fitness, Inc. a Corporation with a business address at 381C Nesconset Hwy, Hauppauge, NY 11788 ("Franchisee").

## **BACKGROUND**

A. On or around August 30, 2022, Franchisor and Franchisee entered into a franchise agreement (the "Franchise Agreement") pursuant to which Franchisee obtained the right and undertook the obligation to own and operate a RockBox Fitness franchised business (the "Franchised Business") in Hauppauge, NY.

B. Franchisor and Franchisee now wish to terminate the Franchise Agreement with the intent that parties will then enter into Franchisor's current form of franchise agreement.

C. The territories of Port Jefferson, NY and Bellmore-Merrick, NY outlined in the Development Agreement signed on or around April 24, 2021 have not opened, and are to be terminated in this Agreement.

## **AGREEMENT**

In consideration of the mutual promises and covenants contained in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is acknowledged, and intending to be legally bound, the parties agree as follows:

1. <u>Background; Definitions.</u>

    a. The parties agree and acknowledge that the Background portion of this Agreement, including all definitions, representations and provisions set forth therein, is hereby incorporated by reference as if fully set forth in this Section.

    b. For purposes of this Agreement, if a capitalized term in this Agreement is not specifically defined herein, that term will be given the same definition that the term is afforded in the Franchise Agreement, as applicable.

2. <u>Termination</u>. Subject to the terms and conditions contained in this Agreement, the parties hereby agree and acknowledge that the Franchise Agreement, as well as all in-term rights and obligations between Franchisor and Franchisee arising from or related to the Franchise Agreement, is terminated as of the Effective Date. Upon execution of this Agreement, Franchisee agrees and acknowledges that it will no longer have any rights under the Franchise Agreement.

3. <u>Release by Franchisee</u>. Franchisee, for itself and all persons and entities claiming by, through, or under it, releases, acquits and forever discharges Franchisor and its present and former officers, employees, members, managers, directors, agents, servants, representatives (including, without limitation, sales brokers), parents, affiliates, subsidiaries, franchisees successors, and assigns (the "Franchisor Releasees") from all obligations, claims, debts, demands, covenants, contracts, promises, agreements, liabilities, costs, attorneys' fees, actions or causes of action whatsoever, whether known or unknown, which Franchisee, by itself, on behalf of, or in conjunction with any other person, persons,

partnership or corporation, has, had or claims to have against the Franchisor Releasees that accrued prior to the Effective Date of this Agreement, including without limitation, those arising out of or related to: (i) the parties' rights or obligations under the Franchise Agreement, as well as any other agreement between Franchisee, and any Franchisor Releasee; or (ii) any other franchise-related statute, law or regulation that is applicable to the parties' relationship. Franchisee represents and warrants that it has not assigned any of the claims released by this Agreement. Franchisee further represents and warrants that it will not initiate, or assist or cooperate with any third party in connection with, an action or other proceeding against any Franchisor Releasee in connection with the claims released in this Section.

4. **Release by Franchisor**. Franchisor, for itself and all persons and entities claiming by, through, or under it, releases, acquits and discharges Franchisee from all obligations, claims, debts, demands, covenants, contracts, promises, agreements, liabilities, costs, attorneys' fees, actions or causes of action whatsoever, whether known or unknown, which Franchisor, by itself, on behalf of, or in conjunction with any other person, persons, partnership or corporation, has, had or claims to have against Franchisee that accrued prior to the Effective Date of this Agreement that arise out of or relate to: (i) the Franchise Agreement, and/or the parties' respective rights and obligations thereunder; and/or (ii) any other franchise-related statute, law or regulation that is applicable to the parties' relationship. Specifically excepted from this release are any claims asserted against Franchisor or any of its present and former officers, employees, members, directors, agents, servants, representatives, affiliates, successors or assigns (the "Indemnified Parties") by any third party, which claims arise out of or relate to the Franchise Agreement prior to the Effective Date of this Agreement. Franchisee agrees to indemnify and hold the Indemnified Parties harmless from any and all losses, damages, liabilities, claims, costs, expenses, or judgments, including reasonable attorneys' fees incurred in connection with such claims (in the manner prescribed in the Franchise Agreement). Franchisor further represents that it has not assigned any of the claims released by this Agreement.

5. **Confidentiality.** The parties agree to maintain the confidentiality of this Agreement and shall not disclose the terms of this Agreement to any person or persons except their professional advisors for legitimate business purposes or otherwise as required by law.

6. **Acknowledgement**. The parties executing this Agreement on behalf of Franchisor and Franchisee have the legal power, right and authority to make this Agreement and to bind each respective party.

7. **Governing Law; Jurisdiction; Venue**. The parties agree and acknowledge that the governing law, jurisdiction and venue provisions set forth in the Franchise Agreement shall also apply to this Agreement.

8. **Entire Agreement**. The Franchise Agreement and this Agreement constitute the entire integrated agreement of the parties with respect to subject matter contained in this Agreement, and no promises, inducements or representations not contained in this Agreement have been made, nor shall any be of any force or effect, or binding on the parties. Any modification of this Agreement must be in writing and signed by both parties.

9. **Counterparts**. This Agreement may be executed in multiple counterparts by the various parties and the failure to have the signatures of all parties on a single Agreement shall not affect the validity or enforceability of any part of this Agreement against any party who executes any counterpart of the Agreement. Executed facsimile copies of this Agreement shall be deemed to be effective as original signatures.

*[Signatures to appear on the following page.]*

**I HAVE READ THE ABOVE AGREEMENT AND UNDERSTAND ITS TERMS. I WOULD NOT SIGN THIS AGREEMENT IF I DID NOT UNDERSTAND AND AGREE TO BE BOUND BY ITS TERMS.**

| FRANCHISOR | FRANCHISEE |
|---|---|
| **SLLR ENTERPRISES, LLC** | **ROCK ISLAND FITNESS, INC** |
| By: *Roger Martin* | By: *Joe Colombo* |
| Name: Roger Martin | Name: Joe Colombo |
| Title: CEO | Title: President |
| Date: 3/21/2025 | Date: 3/20/2025 |
| | By: *Doreen Colombo* |
| | Name: Doreen Colombo |
| | Title: VP |
| | Date: 3/21/2025 |